**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| T-REX PROPERTY AB, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 4:15-cv-00073-RC |
| | § | |
| FAIRWAY OUTDOOR ADVERTISING, | § | |
| LLC, | § | |
| *Defendant.* | § | |
| | § | JURY DEMANDED |

**DEFENDANT FAIRWAY OUTDOOR ADVERTISING, LLC'S MOTION TO DISMISS**
**PURSUANT TO FED. R. CIV. P. 12(b)(6)**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

I.      Introduction ................................................................................................. 1

II.     Background ................................................................................................... 1

   A.   Case Background .......................................................................................... 1

   B.   The Related Patents-In-Suit Disclose Virtually Identical Subject Matter ................. 2

      1.   The '470 Patent .......................................................................................... 2

         a.   Asserted Claim 25 ................................................................................. 4

      2.   The '334 Patent Has Only Minor Differences With the '470 Patent .................... 5

III.    Legal Standard: Motions to Dismiss Under Rule 12(b)(6) for Patent  Ineligibility
        Under 35 U.S.C. § 101 ................................................................................... 6

IV.     Argument .................................................................................................... 9

   A.   The Patents-In-Suit Are Directed to an Abstract Idea ..................................... 9

   B.   The Claims Fail to Add Any Inventive Concept to the Abstract Idea ...................... 11

   C.   No Claim Construction is Needed to Decide Patent Eligibility ............................... 15

V.      CONCLUSION ........................................................................................... 16

## TABLE OF AUTHORITIES

### Cases

*Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) ............................................................ 8, 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................................... 7

*Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada (U.S.)*, 687 F.3d 1266 (Fed. Cir. 2012) ........................................................................................................................................ 15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................................... 7

*BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*, 3:14-cv-3942-M, 2015 U.S. Dist. LEXIS 63798 (N.D. Tex. May 15, 2015) ................................................................................ 8

*Clear with Computers, LLC v. Altec Indus., Inc.*, No. 6:14-cv-79, 2015 U.S. Dist. LEXIS 28816 (E.D. Tex. Mar. 3, 2015) .................................................................................................... 8, 16

*CLS Bank Int'l v. Alice Corp.*, 717 F.3d 1269 (Fed. Cir. 2013) ..................................................... 8

*Cogent Med., Inc. v. Elsevier Inc.*, No. C-13-4479-RMW, 2014 U.S. Dist. LEXIS 139856 (N.D. Cal. Sept. 30, 2014) ................................................................................................................... 16

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343 (Fed. Cir. 2014) ................................................................................................................................... 11, 15

*Cyberfone Sys., LLC v. CNN Interactive Group, Inc.*, 558 Fed. Appx. 988 (Fed. Cir. 2014) ...... 16

*CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366 (Fed. Cir. 2011) ........................... 12

*Dealertrack, Inc. v. Huber*, 674 F.3d 1315 (Fed. Cir. 2012) ....................................................... 12

*Diamond v. Diehr*, 450 U.S. 175 (1981) ........................................................................................ 7

*DietGoal Innovations LLC v. Bravo Media LLC*, No. 13 Civ. 8391 (PAE), 33 F. Supp. 3d 271 (S.D.N.Y. July 8, 2014) .......................................................................................................... 16

*Fairfield Indus., Inc. v. Wireless Seismic, Inc.*, No. 4:14-cv-2972, 2014 U.S. Dist. LEXIS 176599 (S.D. Tex. Dec. 23, 2014) ..................................................................................................... 8, 16

*Glory Licensing LLC v. Toys "R" Us, Inc.*, No. 09-4252 (FSH), 2011 U.S. Dist. LEXIS 51888 (D.N.J. May 16, 2011) ............................................................................................................ 16

*Gottschalk v. Benson*, 409 U.S. 63 (1972) .................................................................................... 7

iii

*I/P Engine, Inc. v. AOL Inc.*, 576 Fed. Appx. 982 (Fed. Cir. 2014) ............................................ 11

*In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008) ................................................................................. 7

*Lumen View Tech, LLC  v. Findthebest.com, Inc.*, 984 F. Supp. 2d 189 (S.D.N.Y. 2013) .......... 16

*Mayo Collaborative Servs. v. Prometheus Labs, Inc.*, 132 S. Ct. 1289 (2012) ............ 9, 11, 12, 13

*Morales v. Square, Inc.*, No. 5:13-cv-1092-DAE, 2014 U.S. Dist. LEXIS 178525 (W.D. Tex. Dec. 30, 2014) ............................................................................................................... 8, 9, 16

*Open Text S.A. v. Alfresco Software Ltd.*, No. 13-cv-04843-JD, 2014 U.S. Dist. LEXIS 132080 (N.D. Cal. Sept. 19, 2014) ..................................................................................................... 16

*OpenTV, Inc. v. Apple, Inc.*, No. 14-cv-01622-HSG, 2015 U.S. Dist. LEXIS 44856 (N.D. Cal. Apr. 6, 2015) ........................................................................................................................ 16

*Sinclair-Allison, Inc. v. Fifth Ave. Physician Servs.*, LLC, No. 12-360-M, 2012 U.S. Dist. LEXIS 179138 (W.D. Okla. Dec. 19, 2012) ........................................................................................ 16

*Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014) ............................................. 8, 11

*Uniloc USA, Inc. v. Rackspace Hosting, Inc.*, 18 F. Supp. 3d 831 (E.D. Tex. 2013) ........... 1, 9, 15

*Wireless Media Innovations, LLC v. Maher Terminals, LLC*, No. 14-7004, 2015 U.S. Dist. LEXIS 51811 (D.N.J. Apr. 20, 2015) ..................................................................................... 15

## **Statutes**

35 U.S.C. § 101 ........................................................................................................................ 1, 7

35 U.S.C. § 251 ........................................................................................................................... 2

## **Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................. 1, 6

MPEP § 201.08 ............................................................................................................................. 2

MPEP § 1402 ............................................................................................................................... 2

## I.    Introduction

Defendant Fairway Outdoor Advertising, LLC ("Fairway") files this Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiff T-Rex Property AB ("T-Rex") has failed to state a claim upon which relief can be granted.  T-Rex's patents are directed to the abstract idea of sending instructions to a computer which then displays content based on the instructions.  Such a broad, abstract idea is ineligible subject matter for patent protection under 35 U.S.C. § 101.  Therefore, the complaint fails to state a claim upon which relief can be granted.

The patents-in-suit (U.S. Patent Nos. RE 39,470 and 7,382,334, hereinafter referred to as the '470 and '334 patents) merely disclose the use of existing, known components (*i.e.*, computers, a database, a modem, a projector, television sets, and cameras) to manage the display of content.  The patents purport to combine and use such components in a new way.  However, the patents are devoid of any specific disclosure of any changes needed to implement the alleged new combination.  Therefore, the patents-in-suit recite nothing more than an abstract idea implemented via the use of existing and generic computer equipment.

Fairway respectfully requests dismissal of this lawsuit under Fed. R. Civ. P. 12(b)(6) for failure to allege infringement of a patentable claim under Section 101.  *See, e.g., Uniloc USA, Inc. v. Rackspace Hosting, Inc.*, 18 F. Supp. 3d 831, 834 (E.D. Tex. 2013) (granting motion to dimiss under Section 101).

## II.    Background

### A.  Case Background

On January 30, 2015, T-Rex sued Fairway, asserting three patents in suit, including the '470 and '334 patents.  On April 15, 2015, T-Rex amended its complaint to only assert the '470

and '334 patents against Fairway.  T-Rex asserts infringement of Claim 25 of the '470 patent but fails to specify any particular claims of the '334 patent.

T-Rex has sued at least eleven additional defendants in a total of nine ongoing lawsuits filed since December 2014, concerning these same patents-in-suit and the alleged infringement by digital display boards and billboards.[1]

### B.  The Related Patents-In-Suit Disclose Virtually Identical Subject Matter

The '470 and '334 patents are both entitled "Digital Information System."  The '470 patent is a reissue of 6,005,534 ("the '534 patent").[2]  The '334 patent is a continuation-in-part[3] of the '534 patent, and therefore also of the reissue '470 patent.  For purposes of this motion, the differences between the '334 patent and the '470 patent are minor.  Therefore, we first describe the '470 patent and then describe the minor differences of the '334 patent.

### 1.  The '470 Patent

The '470 Patent is directed to using computers to manage the display of information and describes the alleged invention in the context of subway railway stations.  *See* '470 patent, 1:37-47.  It asserts that there is a problem with the rapid dessimination of current or real-time information (*e.g.,* schedules, advertisements, etc.) to passengers throughout a subway station.  *Id.*, 2:15-56.  The alleged solution is a system that sending instructions to a central computer

---

[1] *See T-Rex Property AB v. Adams Outdoor Advertising, Inc.*, No. 1:14-cv-01487-SLD-JEH, in the Central District of Illinois; *T-Rex Property AB v. Time-O-Matic, LLC*, No. 1:14-cv-01488-JBM-TSH, in the Central District of Illinois; *T-Rex Property AB v. RMG Networks Holding Corp.*, No. 3:15-cv-00738-M, in the Northern District of Texas; *T-Rex Property AB v. Renfroe Media, LLC*, No. 1:15-cv-00635-TWT, in the Northern District of Georgia; *T-Rex Property AB v. Outfront Media, Inc. et al.*, No. 0:15-cv-01572-ADM-TNL, in the U.S. District of Minnesota; *T-Rex Property AB v. Disselkoen Properties, Inc. et al.*, No. 1:15-cv-00328-PLM, in the Western District of Michigan; *T-Rex Property AB v. Durden Outdoor Displays, Inc.*, No. 1:15-cv-00257-WC, in the Middle District of Alabama; and *T-Rex Property AB v. Land Displays, Inc.*, No. 5:15-cv-02152-JFL, in the Eastern District of Pennsylvania.

[2]  A patent may be reissued where a patentee claims more or less than he had a right to claim.  No new matter is permitted to be introduced into reissued patents.  *See* 35 U.S.C. § 251 and Manual of Patent Examining Procedure (MPEP) § 1402.

[3] A continuation-in-part application ("CIP") is an application that claims priority to an earlier application but adds new matter to it.  *See* MPEP § 201.08

which displays information according to those instructions on displays or monitors located throughout the station. *Id.*, 6:65-7:4.

The only drawing in the patent illustrates the alleged invention:



Referring to the drawing, "information mediators" (24) can send instructions and information to computers in a control center (10). Information mediators can be a company or person who wants to display information. *See* '470 patent, 5:18-23. The central computer or servers in the control center (10) receives those instructions and creates an "exposure list" of what, where, when and for how long to display the information. *Id.*, 3:11-16; claim 1. The computer then sends the information through a radio link to a projector at the subway station

(16)[4] for display.  Thus, the solution described by the '470 patent is simply the transmission of instructions, and potentially information, from a third party to a computer that then sends the information to a projector to be displayed according to the instructions received from the third party.

### a.   Asserted Claim 25

T-Rex has specifically asserted Claim 25 of the '470 patent. Method claim 25 provides:

> 25. A method of selectively displaying digital information at one or more of a plurality of locations, said method comprising:
>
> receiving control instructions from at least one external information mediator;
>
> using said control instructions to generate an exposure list, said exposure list specifying three or more of the following items:
> i) what information content is to be displayed;
> ii) at which of said plurality of locations said information content is to be displayed;
> iii) when said information content is to be displayed for each location at which content is to be displayed; and
> iv) how long said information content is to be displayed for each location at which content is to be displayed;
>
> displaying images at one or more of said locations in accordance with said exposure list; and
>
> permitting said exposure list to be dynamically updated.

Element 1 → *receiving control instructions from at least one external information mediator*

Element 2 → *using said control instructions to generate an exposure list*

Element 3 → *displaying images at one or more of said locations in accordance with said exposure list*

Element 4 → *permitting said exposure list to be dynamically updated*

Claim 25 tracks the only drawing in the patent.  Element numbers have been added to the claim for ease of identifying the claim elements.  Element 1 describes that instructions are received from a mediator.  A mediator can be a company or a person, a computer controlled by a company or a person – basically anything.  *See* '470 patent, 5:18-23; 4:49-51.  Element 2 provides that those instructions are used to generate an exposure list which contains what, where, when, and how long to display information.  *Id.*, 7:10-17; claim 1.  Element 3 describes

---

[4] Station 2 (18) and Station 3 (20) are other subway stations.

displaying the information.   The final element, Element 4, states that the exposure list  can be updated dynamically, in other words in real time.  *Id.*, 1:54-59.

There are no dependent claims on Claim 25.[5]  The other independent claims, claims 1, 13 and 26, are directed to the same abstract idea.[6]  Claim 1 is a method claim.  Claims 13 and 26 are purportedly directed at systems implementing the claimed method.

### 2.  The '334 Patent Has Only Minor Differences With the '470 Patent

As stated above, the '334 Patent is a continuation-in-part of the '470 Patent.   For purposes of this motion, the only difference between the '334 patent and the '470 patent is that the information to be displayed is sent to cinemas and TVs instead of subway stations.   That difference can be seen by comparing the single drawing in each of the patents.   In the '334 patent, the subway station and projector (16 and 22) in the '470 patent have been replaced by cinema, camera, and TV-set  (16, 22 and 40).   *See e.g.*, '334 patent, 5:59-63 ("In the main, the system is comprised of a control center **12** having a communication interface **14** which connects an unlimited number of computerized devices **16**, **18**, **20** which are placed at desired distances from one another for the control of television sets **40** or cameras **22**.").   The systems in the two patents are otherwise the same.

T-Rex has not asserted any particular claims from the '334 Patent.   The '334 patent contains four independent claims, claims 1, 11, 22 and 32.   Claims 1 and 22 are method claims, and 11 and 32 are system claims.   Claim 22 is representative and shows the close similarities among the patents-in-suit.

---

[5] The '470 patent contains a total of 22 dependent claims: Claims 2-12 are dependent on Claim 1 and Claims 14-24 are dependent on Claim 13.

[6] Claims 1 and 25 are method claims and claims 13 and 26 are system claims.

22. A method of coordinating and controlling electronic displays in a digital information system for exposing information on at least one display device through the medium of at least one electronic display, characterized in that it comprises the following steps:

Element 1

generating an exposure list comprising control instructions for coordinating and controlling electronic displays with regard to what shall be exposed, when it shall be exposed, where it shall be exposed and for how long it shall be exposed;

Element 2

using a control center for coordinating and controlling electronic displays, wherein the control center is able to create and update said exposure list in real time with control instruction fields via dynamic booking of information in time for exposure from mediators; and

Element 3

wherein the exposure list enables each electronic display to be controlled, independently of other electronic displays, to receive the same or different information in accordance with the exposure list for exposure of respective electronic display.

Claim 22 discloses a method of using an electronic display to display information. Element numbers have been added to the claim for ease of identifying the claim elements. Element 1 provides that an exposure list is generated containing instructions regarding what, where, when, and how long to display information. *See* '334 patent, 3:22-26; 3:51-55; 4:63-67. Element 2 describes using a control center to update the exposure list in real time based on instructions from a mediator. *Id.*, 3:27-31; 4:56-60. Element 3 states that the exposure list allows for each display to independently display information. *Id.*, 3:32-37.

Given the close similarities between the patents-in-suit, the analysis of both patents for purposes of this motion are the same.

### III.      Legal Standard: Motions to Dismiss Under Rule 12(b)(6) for Patent Ineligibility Under 35 U.S.C. § 101

A party may move for dismissal under Fed. R. Civ. P. 12(b)(6) based upon failure to state a claim upon which relief can be granted.   A motion to dismiss under Rule 12(b)(6) tests the

legal sufficiency of the assertions made in the complaint.  "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should…be exposed at the point of minimum expenditure of time and money by the parties and the court."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (quotations and citations omitted).

To survive a Rule 12(b)(6) motion to dismiss, T-Rex's Complaint must contain sufficient factual allegations to show that it is plausibly entitled to relief.  *Twombly*, 550 U.S. at 555-56. "A claim has facial plausibility when the pleaded factual content allow allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  While factual allegations are taken as true, legal conclusions are given no such deference.  *Twombly*, 550 U.S. at 555.

In order for T-Rex to proceed with its lawsuit, the claims of the patents-in-suit must be directed to patent-eligible subject matter under the terms of the Patent Act.  *In re Bilski*, 545 F.3d 943, 950-51 (Fed. Cir. 2008).  Section 101 of the Patent Act specifies patentable subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."  *See* 35 U.S.C. § 101.  Three exceptions exist for laws of nature, physical phenomena, and abstract ideas.  *Diamond v. Diehr*, 450 U.S. 175, 185 (1981).  Of critical importance to this motion is the concept that abstract ideas are not patentable because "they are the basic tools of scientific and technological work."  *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972).

Invalidity under Section 101 is a question of law.  *In re Bilski*, 545 F.3d at 951.  Under the framework explained by the Supreme Court in *Alice*, a two-part analysis must be conducted in reviewing patent eligibility:  1) a court must determine "whether the claims at issue are directed to one of the patent-ineligible concepts;" and if so, 2) whether the elements in the patent

claim, alone or in combination, contain an "inventive concept sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *See Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). "A claim that recites an abstract idea must include additional features" which "must be more than well-understood, routine, conventional activity." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014)(quotations and citations omitted). A party seeking to invalidate a patent on the basis of ineligible subject matter must prove invalidity by clear and convincing evidence. *CLS Bank Int'l v. Alice Corp.*, 717 F.3d 1269, 1304-05 (Fed. Cir. 2013).

A determination of patent eligibility under Section 101 may be made at the initial pleading stages of a case like here. *Ultramercial*, 772 F.3d at 718-20. "[S]ubject matter eligibility is the primal inquiry, one that must be addressed at the outset of litigation." *Id.* at 718 (Mayer, concurring). "[T]he section 101 determination bears some of the hallmarks of a jurisdictional inquiry. Just as a court must assure itself of its own jurisdiction before resolving the merits of a dispute, it must likewise first assess whether claimed subject matter is even eligible for patent protection before addressing questions of invalidity or infringement." *Id.* In *Ultramercial*, the Federal Circuit recognized the benefits of addressing Section 101 issues at the outset of litigation, such benefits including the conservation of scarce judicial resources, abating vexatious and meritless infringement suits at the outset before each side amasses high expenses and fees, and protecting the public interest in preventing monopolies over broad and ineligible subject matter. *Id.* at 719-20. It is common practice for courts to address patent eligibility at the outset of a case in a motion under Fed. R. Civ. P. 12 (b)(6).[7]

---

[7] *See e.g., Clear with Computers, LLC v. Altec Indus., Inc.*, No. 6:14-cv-79, 2015 U.S. Dist. LEXIS 28816, at *10 (E.D. Tex. Mar. 3, 2015); *Fairfield Indus., Inc. v. Wireless Seismic, Inc.*, No. 4:14-cv-2972, 2014 U.S. Dist. LEXIS 176599, at *9 (S.D. Tex. Dec. 23, 2014); *Morales v. Square, Inc.*, No. 5:13-cv-1092-DAE, 2014 U.S. Dist. LEXIS 178525, at *9 (W.D. Tex. Dec. 30, 2014); and *BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*, No. 3:14-cv-3942-M, 2015 U.S. Dist. LEXIS 63798, at *15 (N.D. Tex. May 15, 2015).

IV.　　　　Argument

A.  The Patents-In-Suit Are Directed to an Abstract Idea

The first step in determining whether the claims are directed to a patent-ineligible abstract idea is to examine the claims.  The claims as a whole should be considered, "rather than dissecting and evaluating some elements separately from the rest."  *See Uniloc*, 18 F. Supp. 3d at 834.  "In determining whether a claim is directed to an abstract idea, courts look past the claim language to the purpose of the claim – in other words, what the invention is trying to achieve."  *Morales v. Square, Inc.*, No. 5:13-cv-1092-DAE, 2014 U.S. Dist. LEXIS 178525, at *16 (W.D. Tex. Dec. 30, 2014) (citation and quotations omitted).

As described above in Sections II.B.1. and 2. above, the claims of the '470 and '334 patents are directed to the abstract idea of sending instructions to a computer so that the computer can send display content based on those instructions.  The patents-in-suit merely disclose the abstract idea of receiving instructions on information to be displayed electronically; updating the instructions; and displaying such information according to the instructions (what, when, where, and how long).  Thus, the claims merely point to the broad ability to send instructions to a computer, and then have content displayed in accordance with those instructions.  The steps disclosed by the patents-in-suit are "well-understood, routine, conventional activity," or obvious.  *Mayo Collaborative Servs. v. Prometheus Labs, Inc.*, 132 S. Ct. 1289, 1299 (2012).

The patents-in-suit disclose the use of basic and well known components to carry out the claimed inventions.  For instance, the sole drawing of the '470 patent includes such ordinary equipment as a database, a modem, a radio link, a projector, and computers.  The specification describes the components contained in the drawing, stating: "[t]he illustrated system also

includes an advertising agency which is connected to the control centre **12** through the medium of a computer **24** and a modem **26**." '470 patent, 4:49-51.

The '470 patent written specification reveals little other than the use of known components including servers, a central computer, database, modem, and projector. The specification describes a preferred embodiment:  "[i]n the main, the system is comprised of a control centre **12** having a communication interface **14** which connects an unlimited number of computerized devices **16**, **18**, **20** which are placed at desired distances from one another for the control of projectors **22** whose projector images or pictures are displayed in the aforesaid public places." *See* '470 patent, 4:43-48; '334 patent, 5:59-63.  In another embodiment, "the hardware is comprised of a number of powerful servers which form a central computer **28**, said computer **28** and servers **1**, **2**, **3** essentially carrying out the following procedures." *See* '470 patent, 10:47-50; '334 patent, 11:43-46.

The '334 patent discloses virtually the same components, only substituting cinema, TV-set and camera  (16, 22 and 40) for projector (16 and 22) in the '470 patent.

Regarding the use of such basic components, the specifications of the patents-in-suit describe a central computer "divided into three powerful servers," one of which "receives material from external information mediators, via modems."  *See* '470 patent, 6:65-68; '334 patent, 8:30-32.  The second server is given the task of sending information.  *See* '470 patent, 7:1-2; '334 patent, 8:33-34.  The third server processes "information and control instructions received from the information mediator."  *See* '470 patent, 7:7-9; '334 patent, 8:40-41.  Further, the third server is given the task of organizing the information to be delivered "via an exposure list."  *See* '470 patent, 7:13-17; '334 patent, 8:43-51.  Thus, the three servers perform the common functions of receiving, sending, and processing data, without revealing any details regarding how to perform such basic functions.

10

In summary, the patents-in-suit describe the use of common computer and other known generic components to send instructions to a computer so that the computer can send content to a display based on those instructions.  Such a broad and malleable concept is simply not patent-eligible material because the claims of the patents-in-suit "recite an abstraction—an idea, having no particular concrete or tangible form."  *See Ultramercial*, 772 F.3d at 715.

## B.  The Claims Fail to Add Any Inventive Concept to the Abstract Idea

Because the patents-in-suit disclose the abstract idea of a computer displaying content on an electronic display based on instructions from another source, the claims must also be examined to see if they disclose any inventive concept.

Claiming the use of a computer to carry out particular claims does not absolve the abstract claims from patent ineligibility.  *Alice* clearly held that implementing an abstract idea on a generic computer is patent ineligible subject matter.  *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014).  "For the role of a computer in a computer-implemented invention to be deemed meaningful in the context of this analysis, it must involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'"  *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1347-48 (Fed. Cir. 2014) (quoting *Alice*, 134 S. Ct. at 2359).  Under *Alice*, "abstract ideas untethered to any significant advance in science and technology are ineligible for patent protection."  *I/P Engine, Inc. v. AOL Inc.*, 576 Fed. Appx. 982, 992 (Fed. Cir. 2014)  (Mayer, concurring).

Using a computer to obtain data, adjust data, and issue automated instructions is nothing more than "well-understood, routine, conventional activity" and not patent eligible.  *See Mayo*, 132 S. Ct. at 1299; *Alice*, 134 S. Ct. at 2359.  Further, instructing a person to engage in such well-understood, routine, conventional activity as the use of computer components to transmit information to an electronic display is insufficient "to transform an unpatentable law of nature

11

into a patent-eligible application of such a law." *Mayo*, 132 S. Ct. at 1294; *see also CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1376 (Fed. Cir. 2011).

The claims do not specify anything other than the use of standard equipment such as basic computers, a database, a modem, a radio link, and a projector or other display, for their intended purposes.  As an example, the specification of the '470 patent notes: "In summary, the following hardware is required in the illustrated embodiment; three central servers **1**, **2**, **3** plus large databases **30**, for instance three hard disks each of 27 GB.  The server **1** is connected to the information mediators via modems, wherein a First Class® server is recommended with regard to promoting user-friendliness."  '470 patent, 11:13-18.   Other alternative known servers are mentioned by the specification including "[p]resent-day Power Macintosh® servers." *Id.*, 12:50-51.  The specification also discloses the use of SUN® servers or an Alpha® from Digital®, as alternatives for servers **1**, **2**, **3**.  *Id.*, 12:55-56.  The use of such generic computer components to implement the abstract idea without limitation are not transformative.   Rather than add an inventive concept, the claims of the patents-in-suit describe conducting routine activity using existing computer components.

Beyond the disclosed use of standard computer components, there is no meaningful limitation of the claims because the claimed methods "do not specify how the computer hardware and database are specially programmed to perform the steps claimed" where the computer "could be programmed to perform very different tasks in very different ways." *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012).  The patents-in-suit disclose the use of common hardware (Macintosh servers;[8] SUN servers;[9] Alpha from Digital;[10] and 27

---

[8] *See* '470 patent, 12:50-51.
[9] *Id.*, 12:55-56.
[10] *Id.*

GB hard disks [11]) without any particularized form of using such known components, or implementing specially developed software.

The patents-in-suit fail to indicate any particular way in which the cited components should function, or how the steps should be carried out. The claims are devoid of any specific recitation of structure beyond the standard components. The patents-in-suit contain no directions or guidance regarding unique use of such components, or how the components uniquely function. For instance, the specifications fail to describe the software needed to perform the invention. "For achieving a purposeful digital information system according to the present invention, there is used to this end specifically developed software, *which will not be described in more detail here*." *See* '470 patent, 13:8-11; '334 patent, 14:1-4 (emphasis added).

The specifications also vaguely describe specific drive routine means, while failing to disclose any such means for carrying out the claims. "In order to achieve the inventive digital information system, it is necessary to provide a number of drive routine means, such as communication drive routine means for transferring information between external mediators **24** and the control center **12**, copying means for copying to the various databases **30**, **36**, drive routine means for composing the picture or exposure material to be shown, exposure handlers, drive routine means for a radio network…" *See* '470 patent, 13:42-49; '334 patent, 14:34-41. But the specifications never describe how to make those components.

Here, "the steps in the claimed processes (apart from the natural laws themselves) involve well-understood, routine, conventional activity previously engaged in by [others] in the field." *Mayo*, 132 S. Ct. at 1294. The concepts incorporated by the claims are far from novel or inventive. For instance, the patents-in-suit refer to an "exposure list," described as "a series of instructions as to what shall be shown, where it shall be shown, when it shall be shown and for

---

[11] *Id.*, 11:14-15.

how long, etc." *See* '470 patent, 9:58-61; '334 patent, 3:22-26.  The exposure list is also referred to as containing "control instructions."  *See* '470 patent, 8:19-20; '334 patent, 4:41-42.  There is no specific description of the form of those instructions or how to implement those instructions.  Thus, an exposure list is merely the concept of instructions for the display of information.  *See* '334 patent at 7:10-16.

Another concept incorporated into both patents-in-suit that is neither novel nor inventive is that of the "information mediator."  The information mediator is shown in **24** in the drawing above and described broadly by the specifications as "not only referring to advertising agencies but to all companies and private persons who wish to utilize the system for commercial reasons or for the display of information that concerns a general public."  *See* '470 patent, 5:19-23; '334 patent, 6:47-51.  That description encompasses virtually any source.  Again, the mediator is nothing more than a concept.

The concept of changing the exposure list in real time is also described.  "Real time" is described in the specifications as "at the time of making the order, possibly with a short delay due to processing."  *See* '470 patent, 5:28–31; '334 patent, 6:56-58.  "Real time" capability is an obvious addition, insufficient to add an inventive concept to the abstract claims of the patents-in-suit.  Again, there is no specific description of how to implement any change in real time.  It is nothing more than a concept.  Therefore, none of the above concepts, incorporated by the claims, disclose anything inventive or new or effect a technological improvement

In sum, the asserted patents lack the requisite level of inventiveness to transform an unpatentable, abstract idea into a patent-eligible invention because no significant advance has been made to the abstract concept of transmitting and displaying content.

### C.  No Claim Construction is Needed to Decide Patent Eligibility

This motion is ripe for determination because no claim construction issues bear upon patent eligibility.  Claim construction of the patents-in-suit will not impact the outcome in this case because no possible construction would preclude a determination that the claims disclose an abstract idea.  *See Wireless Media Innovations, LLC v. Maher Terminals, LLC*, No. 14-7004, 2015 U.S. Dist. LEXIS 51811, at *11 (D.N.J. Apr. 20, 2015) ("[e]ven if the Court construes all claim terms in a manner most favorable to Plaintiff, it would still find that none of the claims survive § 101.").

No claim construction will salvage the claims because the specifications are devoid of any specifics on any changes needed to implement the hardware or how to implement software to accomplish the alleged invention.  *See* Sec. IV.B. above.  Any claim construction of the terms of the patents-in-suit would invariably still relate back to the specification and fail to introduce anything novel.  Therefore any construction of the patents-in-suit will necessarily be general and fail to lift the claims out of being directed to an abstract idea.

Given the present facts and the claims of the patents-in-suit, determining patent ineligibility at this stage is both appropriate and timely.  There is no hard-and-fast rule that a court must construe terms in the claims at issue before it performs a Section 101 analysis.  "Although the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter, claim construction is not an inviolable prerequisite to a validity determination under § 101."  *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1349 (Fed. Cir. 2014); *see also Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012).  "Section 101 questions of patentability may be resolved before claim construction.  *See Uniloc*, 18 F. Supp. 3d at 834. Other courts in the Fifth Circuit have acted in accordance with the above statement and granted

12(b)(6) motions to dismiss on the issue of patent eligibility, prior to claim construction.[12] Beyond the Fifth Circuit, other courts have similarly granted 12(b)(6) motions to dismiss on the issue of patent eligibility, without first engaging in claim construction.[13]

## V.        CONCLUSION

For the above reasons, Fairway respectfully requests dismissal of this lawsuit under Fed. R. Civ. P. 12(b)(6) given that T-Rex's asserted patents-in-suit are not directed to patent-eligible subject matter.

---

[12] *See, e.g., Clear with Computers, LLC v. Altec Indus., Inc.*, No. 6:14-cv-79, 2015 U.S. Dist. LEXIS 28816, at *10 (E.D. Tex. Mar. 3, 2015) ("the particular facts of this case indicate that claim construction is uncessary.  Here, the claim language is relatively simple and neither party has identified any disputes presently ripe for claim construction."); *Morales v. Square, Inc.*, No. 5:13-cv-1092-DAE, 2014 U.S. Dist. LEXIS 178525, at *9 (W.D. Tex. Dec. 30, 2014); and *Fairfield Indus., Inc. v. Wireless Seismic, Inc*., No. 4:14-cv-2972, 2014 U.S. Dist. LEXIS 176599, at *9-10 (S.D. Tex. Dec. 23, 2014).

[13] *See Cogent Med., Inc. v. Elsevier Inc.*, No. C-13-4479-RMW, 2014 U.S. Dist. LEXIS 139856, at *8 (N.D. Cal. Sept. 30, 2014); *Open Text S.A. v. Alfresco Software Ltd.*, No. 13-cv-04843-JD, 2014 U.S. Dist. LEXIS 132080, at *10 (N.D. Cal. Sept. 19, 2014); *Cyberfone Sys., LLC v. CNN Interactive Group, Inc.*, 558 Fed. Appx. 988, 992 (Fed. Cir. 2014); *Glory Licensing LLC v. Toys "R" Us, Inc.*, No. 09-4252 (FSH), 2011 U.S. Dist. LEXIS 51888 (D.N.J. May 16, 2011); *DietGoal Innovations LLC v. Bravo Media LLC*, No. 13 Civ. 8391 (PAE), 33 F. Supp. 3d 271, 289 (S.D.N.Y. July 8, 2014) (finding that the claims were "sufficiently straightforward" such that claim construction was unnecessary to understand the abstract content of the claims); *Sinclair-Allison, Inc. v. Fifth Ave. Physician Servs.*, LLC, No. 12-360-M, 2012 U.S. Dist. LEXIS 179138 (W.D. Okla. Dec. 19, 2012); *Lumen View Tech, LLC v. Findthebest.com, Inc*., 984 F. Supp. 2d 189, 205 (S.D.N.Y. 2013) (finding that "the Section 101 inquiry encompasses only broad subject matter categories and claim construction is not necessary to reveal any material legal issues and would not be a wise use of judicial resources."); *OpenTV, Inc. v. Apple, Inc.*, No. 14-cv-01622-HSG, 2015 U.S. Dist. LEXIS 44856, at *6 (N.D. Cal. Apr. 6, 2015) ("In line with the Federal Circuit and several other courts in this district, the Court finds that this Motion can be resolved on the pleadings prior to formal claim construction.").

May 22, 2015

Respectfully submitted,

*/s/ Russell T. Wong*
Russell T. Wong
*Lead Attorney*
Texas Bar No. 21884235
Sarah R. Cabello
Texas Bar No. 24052877
Wong, Cabello, Lutsch, Rutherford &
      Brucculeri, LLP
20333 SH 249, Suite 600
Houston, Texas 77070
Tel.:  (832) 446-2400
Fax: (832) 446-2424
Email: rwong@counselip.com
Email: scabello@counselip.com

*Attorneys for Defendant*
**FAIRWAY OUTDOOR ADVERTISING,
LLC**

## CERTIFICATE OF SERVICE

     I hereby certify that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who have consented to electronic service, pursuant to Local Rule CV-5(a)(3)(A), on this 22nd day of May, 2015.

*/s/ Lynn Marlin*
Lynn Marlin