**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| T-REX PROPERTY, AB,<br><br>Plaintiff,<br><br>v.<br><br>FAIRWAY OUTDOOR ADVERTISING, LLC,<br><br>Defendant. | Civil Action No: 4:15-cv-073-RC<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF T-REX PROPERTY, AB'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........ 1

II. STATEMENT OF ISSUES ........ 1

III. FACTUAL BACKGROUND ........ 1

IV. LEGAL STANDARD ........ 5

V. ARGUMENT ........ 6

A. T-REX'S AMENDED COMPLAINT SETS FORTH A PLAUSIBLE CLAIM TO RELIEF AND THUS SATISFIES RULE 12(b)(6). ........ 6

B. T-REX'S '470 & '334 PATENT CLAIMS ARE VALUD UNDER § 101. ........ 8

1. T-Rex's Patents Cover More than an Abstract Idea ........ 9

2. T-Rex's Claims Include Additional Meaningful Limitations. ........ 12

VI. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alice Corp. v. CLS Bank Int'l*,
134 S. Ct. 2347 (2014) ........ *passim*

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 6

*Baker v. Putnal*,
75 F.3d 190 (5th Cir. 1996) ........ 5

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 6

*Bilski v. Kappos*,
562 U.S. 593 (2010) ........ 9

*Certified Measurement, LLC v. Centerpoint Energy Houston Elec., LLC*,
2015 U.S. Dist. LEXIS 39821 (E.D. Tex. Mar. 29, 2015) ........ 7

*Clear with Computers, LLC v. Altec Indus., Inc.*,
2015 U.S. Dist. LEXIS 28815 (E.D. TX Mar. 3, 2015) ........ 10

*Content Extraction & Transmission LLC v. Wells Fargo Bank*,
776 F.3d 1343 (Fed. Cir. 2014) ........ 12, 13

*Content Guard Holdings, Inc. v. Amazon.com, Inc.*,
Case No. 2:13CV-1112-JRG, Order April 8, 2015 ........ 7, 8

*CoreBrace LLC v. Star Seismic LLC*,
566 F.3d 1069 (Fed. Cir. 2009) ........ 5

*DDR Holdings, LLC v. Hotels.com*,
773 F.3d 1245 (Fed. Cir. 2014) ........ 13, 14

*Digitech Image Techs. v. Electronics for Imaging, Inc.*,
758 F. 3d 1344 (Fed. Cir. 2014) ........ 11

*Erickson v. Pardus*,
551 U.S. 89 (2007) ........ 6

*Freeny v. Murphy Oil Corp.*,
2015 U.S. Dist. LEXIS 6377 ........ 10

*Smartflash LLC v. Apple Inc.*,
2015 U.S. Dist. LEXIS 17754 (E.D. Tex. Feb. 13, 2015) ....................13

*Kroy IP Holdings, LLC v. Safeway, Inc.*,
2015 U.S. Dist. LEXIS 69363 (E.D. Tex. May 29, 2015)....................9

*Lowrey v. Texas A&M Univ. Sys.*,
117 F.3d 242 (5th Cir. 1997) ....................5

*Loyalty Conv. Sys. Corp. v. American Airlines, Inc.*,
2014 U.S. Dist. LEXIS 122244 (E.D. Tex. Sep. 3, 2014) ....................9

*Mayo Collab. Servs. v. Prometheus Labs., Inc.*,
132 S. Ct. 1289 (2012)....................9

*My Health, Inc. v. Lifescan, Inc.*,
Case No. 2:14-CVv-00683 Report....................7

*OIP Techs., Inv. v. Amazon.com, Inc*.,
2015 U.S. App. LEXIS 9721 (Fed. Cir., Jun11, 2015)....................9

*PC Connector Solutions LLC v. Smartdisk Corp*.,
406 F.3d 1359 (Fed. Cir. 2005)....................12

*Phonometrics, Inc. v. Hospitality Franchise Sys.*,
203 F.3d 790 (Fed. Cir. 2000)....................6

*Presqriber, LLC v. Advanced Data Sys. Corp.*,
Case No. 6:14 –CV-859, Order, June 29, 2015 (same result in related case in order dated March 31, 2015)....................7

*Ramming v. United States*,
281 F.3d 158 (5th Cir. 2001) ....................5

*Rockstar Consortium US LP, Inc. v. Samsung Elecs. Co., Ltd.*,
2014 U.S. Dist. LEXIS 67097 (E.D. Tex. May 15, 2014)....................10, 11

*Smartflash LLC v. Apple, Inc.*,
2015 U.S. Dist. LEXIS 18419 (E.D. Tex. Jan. 21, 2015)....................13, 14

*TQP Developments, LLC v. Intuit, Inc.*,
No. 2:12-CV-180-WCB, Order, Feb. 19, 2014....................14

*Ultramercial, Inc. v. Hulu, LLC*,
722 F.3d 1335 (Fed. Cir. 2013) *vacated on other grounds by WildTangent, Inc. v. Ultramercial, LLC*, 134 S. Ct. 2870 (2014)....................3, 13

*Ultramercial, Inc. v. Hulu, LLC,*
772 F. 3d 709 (Fed. Cir. 2014)....................13

*Univ. of Utah Research Found. v. Ambry Genetics Corp. (In re BRCA1- & BRCA2- Based Hereditary Cancer Test Patent Litig.),*
774 F.3d 755 (Fed. Cir. 2014)....................12

*Westinghouse v. Boyden Power Brake Co.,*
170 S. Ct. 537 (1898)....................11

**Statutes**

35 U.S.C. § 101.................... *passim*

**Other Authorities**

Federal Rule of Civil Procedure 8(a)(2) ....................6

*http://www.txed.uscourts.gov/cgi-bin/view_document.cgi?document=22244* p. 5 ....................7

Rule 12(b)(6)....................1, 5, 6, 7

U.S. Patent No. RE 39,470 .................... *passim*

U.S. Patent No. 7,382,334.................... *passim*

## I. INTRODUCTION

Defendant Fairway Outdoor Advertising has moved under Rule 12(b)(6) to dismiss for failure to state a claim the Amended Complaint filed by T-Rex Property AB,[1] which alleges that digital signage operated by Fairway infringes the claims of T-Rex's U.S. Patent Nos. RE 39,470 and 7,382,334. The motion superficially addresses a single claim of each patent, acknowledges only one of the many post-*Alice* decisions from this Court, and fails overall to consider at this early stage of litigation, and in a mere 16 pages, the complexity of the evolving law on 35 U.S.C. § 101. Fairway's motion should be denied because it does not even try to prove that all of the claims of both asserted patents violate the Supreme Court's decision in *CLS Bank v. Alice* and this Court's precedent, and cover only non-patent-eligible subject matter under 35 U.S.C § 101. Indeed, under *Alice*, as well as Federal Circuit and this Court's precedent, T-Rex's '470 and '334 Patent claims easily satisfy § 101, and Fairway's motion should be denied with prejudice.

## II. STATEMENT OF ISSUES

At issue is whether T-Rex's pleadings contained in its Amended Complaint, on their face, set forth a plausible claim to relief; and if the Court does proceed to address the issue of § 101, whether the claims of T-Rex's patents-in-suit relate to merely an abstract idea, and preempt future developments in this field, without meaningful additional limitations on claim scope.

## III. FACTUAL BACKGROUND

Plaintiff T-Rex is a Swedish company founded by two named inventors of the '470 and '334 Patents, Mats Hyland and Mats Dahlgren. It is the successor in the asserted patent rights to its founders' prior entity, DHJ Media AB. The inventors are pioneers in the digital signage space who have developed and demonstrated actual display systems in, for example, the London Underground, as well as in airports and other transit environments. It is important to note, in

[1] *See* Dkt [14] Plaintiff's Amended Complaint with the attachments.

evaluating Fairway's sweeping generalizations about what technology may have been known versus novel, that the inventors developed their patented digital signage system in the mid-1990s, roughly twenty years ago, when no such system was routine or conventional at all.

The first application in the chain leading to the '470 Patent, and then the '334 Patent, was filed abroad on April 26, 1996, followed by a U.S. provisional application on May 14, 1996. Although Fairway self-servingly cherrypicks only one method claim from each patent to discuss, generally "[t]he invention relates to a digital display ***system*** for displaying in formation on at least one display means…."[2] The introductory section of each patent elaborates that the novel system further incorporates a combination of additional physical equipment including some form of projector, television or camera, external information mediators, communication interfaces for dynamic control, exposure handlers, and networked station computers distributed in conjunction with the display means. The combination amounts to a concrete system, not an abstract idea, which in use allows for the dynamic control of displays, such as advertising, on one or a multiplicity of physical display screens, spread out to reach a selected target audience.

In addition to method claim 25, highlighted by Fairway, the '470 Patent includes, for example, system claim 26, reproduced below:

> 26. A system for selectively displaying digital information at one or more of a plurality of locations, said system comprising:
>
> a computerized control center having a plurality of communication interfaces for receiving control instructions from at least one external information mediator, said computerized control center including means for generating and dynamically updating an exposure list from said control instructions, said exposure list specifying three or more of the following items:
>
> i) what information content is to be displayed;
>
> ii) at which of said plurality of locations said information content is to be displayed;

[2] Abstracts, '470 & '334 Patent.

> iii) when said information content is to be displayed for each location at which content is to be displayed; and
>
> iv) how long said information content is to be displayed for each location at which content is to be displayed;
>
> a computerized device situated at each one of said plurality of locations, each computerized device being electronically coupled to said computerized control center; and
>
> a means for displaying images in accordance with said exposure list associated with each one of said computerized devices.

System claim 32 of the ’334 Patent reads as follows:

> 32. An arrangement for coordinating and controlling electronic displays in a digital information system for displaying information on at least one display device through the medium of at least one electronic display, said information being supplied by mediators of information, for exposure or display, characterized in that it comprises:
>
> computerized control center means, wherein the control center has communication interfaces against;
>
> computerized means for coordinating and controlling electronic displays;
>
> exposure handler means whereby the control center functions, in real time and through the medium of said exposure handler, to create and update an exposure list having control instruction fields, via dynamic booking of display information from mediators; and
>
> wherein said exposure list, containing control instructions, coordinates and controls the electronic displays in question with respect to what shall be exposed, where it shall be exposed, when it shall be exposed, and for how long it shall be exposed, and enables each electronic display independently of other electronic displays, to receive the same or different information according to the exposure list for exposure or display by respective electronic display.

Dependent claims of the ’334 Patent, e.g., claims 33, 40, and 41, add additional narrowing limitations such as an always-on interface with the mediator, and specifics about the unique addressing of the electronic display screens, more-narrowly in claim 41 the use of TCP/IP addresses. In 1996, when the patent-eligibility of T-Rex’s claimed invention must be judged

under § 101 and *Alice*,[3] this was anything but a conventional, generic, or routine use of a general purpose computer to execute an abstract idea. These patents embodied an entirely new combination of special purpose pieces of interconnected physical equipment to present information publicly. Not surprisingly, T-Rex's patents have been forward-cited many times in subsequent patents of competitors and licensed by major players in the advertising industry.

In its Amended Complaint, T-Rex alleges that Fairway has infringed the '470 and '334 Patents. Under this district's Local Patent Rules, specifically 3-1, T-Rex has not yet made its "Disclosure of Asserted Claims and Infringement Contentions." T-Rex expects to identify at least claims 24 and 26 of the '470 Patent and claims 22, 29, 30, 32, 33, 40, and 41 of the '334 Patent as allegedly infringed, although some details of the dependent claim limitations may be subject to verification through discovery of details of Fairway's exact implementation.

Paragraphs 9-17 of the Amended Complaint set forth the foregoing concrete details of the patentable combinations of elements in these claims, and provide Fairway with more-than-adequate notice of what allegedly infringes, including for example, the following:

> 10. A system operating according to an embodiment of the '470 Patent can include a control center with a communication interface that connects devices to create and update a display list in real time using control instruction fields sent from external mediators and to transmit and display the desired images to one or more electronic displays that can be controlled independently of other electronic displays. (*Id.* at 3:4-19; 4:42-45) In embodiments, the control center can include one or more servers, workstations, and databases stored on one or more physical storage devices, and can include redundancy, of both computer hardware and the information stored, where the devices can be connected using a network, such as a LAN (Local Area Network) or by using a cable-carried ISDN solution (Integrated Services Digital Network) or other fixed lines that have a similar capacity. (*Id.* at 4:57-5:16; 5:59-67; 6:41-59; 12:55-13:7)
>
> 11. In one embodiment of the invention, personnel operating a work station can enter information to be displayed from an external mediator via

[3] *See Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1347 (Fed. Cir. 2013) (noting that a § 101 analysis requires some understanding of the state of the art at the relevant time) *vacated on other grounds by WildTangent, Inc. v. Ultramercial, LLC*, 134 S. Ct. 2870 (2014).

projector control instructions in the exposure list created by the server. (*Id.* at 8:10-26) Operators are able to interrupt a queue in the server in order to update the exposure list with information generated centrally from the control center or with information from an external information mediator. (*Id.*)

12. Information mediators can use an exposure program to deliver complete images (e.g. an image, a series of images or a video clip) for display which would not require processing by the control center, these can be dynamically added to the exposure list by the exposure handler. (*Id.* at 11:19-28) External information mediators can thus deliver a complete image for display (an image, a series of images or a video clip) which can be processed automatically and inserted into the exposure list, or an administer can select information from an external mediator and process the information so that it can be inserted into the exposure list via the exposure handler. (*Id.* at 8:27-41)

In short, on its face, T-Rex's Amended Complaint sufficiently sets forth its plausible claim for relief against Fairway for alleged infringement of the '470 and '334 Patents.

## IV. LEGAL STANDARD

Motions to dismiss are purely procedural, and thus the law of the regional circuit governs.[4] In the Fifth Circuit, courts considering motions to dismiss must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory.[5] When reviewing a motion to dismiss under Rule 12(b)(6), courts look to the allegations in the complaint to determine whether they are sufficient to survive dismissal.[6] In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are viewed with disfavor and rarely granted.[7]

---

[4] *CoreBrace LLC v. Star Seismic LLC*, 566 F.3d 1069, 1072 (Fed. Cir. 2009).

[5] *Ramming v. United States*, 281 F.3d 158, 161-62 (5th Cir. 2001).

[6] *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996) (citing *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992)).

[7] *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citing *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005)); *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997) (citing *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982)).

Under Federal Rule of Civil Procedure 8(a)(2), a plaintiff is only required to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."[8] The Federal Rules do not require an elaborate recitation of every fact a plaintiff may ultimately rely upon at trial; rather, they necessitate only a statement sufficient to "provide the defendant with 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"[9] While it is clear that the complaint must allege enough facts to state a claim that is "plausible on its face,"[10] the "plausibility" standard is not akin to a probability requirement.[11] The plaintiff must simply provide enough facts to "raise a reasonable expectation that discovery will reveal evidence" that a defendant has acted unlawfully.[12] In the context of patent litigation, this requirement merely ensures that an accused infringer has sufficient knowledge of the facts alleged to enable it to answer the complaint and defend itself.[13]

## V. ARGUMENT

### A. T-REX'S AMENDED COMPLAINT SETS FORTH A PLAUSIBLE CLAIM TO RELIEF AND THUS SATISFIES RULE 12(b)(6).

Contrary to Fairway's generic suggestion that, "[i]t is common practice for courts to address patent eligibility at the outset of a case in a motion under F.R.Civ.P. 12(b)(6)," this Court in particular has generally disfavored prematurely dismissing patent complaints for failure to state a claim on the grounds of purported patent-ineligibility under § 101. Recently, in both

---

[8] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement . . . .' Specific facts are not necessary.").

[9] *Lormand*, 565 F.3d at 256 (quoting *Twombly*, 550 U.S. at 555).

[10] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[11] *Twombly*, 550 U.S. at 555-56.

[12] *Id.* at 556.

[13] *Phonometrics, Inc. v. Hospitality Franchise Sys.*, 203 F.3d 790, 794 (Fed. Cir. 2000).

*Certified Measurement, LLC v. Centerpoint Energy Houston Electric LLC*[14] and in *My Health Inc. v. Lifescan, Inc.*,[15] neither acknowledged by Fairway, this Court appropriately emphasized that, "[t]he difficulty of making a substantive ruling on the validity of an issued patent in what is—in essence—a complete vacuum cannot be understated." Here, the Amended Complaint on its face, viewed most favorably to T-Rex, and with all inferences in T-Rex's favor, sets forth a plausible claim that Fairway is infringing presumptively-valid patent claims, and thus Fairway's motion to dismiss should be denied.

Two judges of this Court in fact now have a standing order that a motion based on § 101 cannot be filed, absent obtaining leave of the Court for good cause shown, prior to issuance of a claim construction order.[16] This practice comports with other decisions of the Court denying without prejudice Rule 12(b)(6) motions to dismiss until after a *Markman* order issues.[17] In the present case, Fairway dismisses all potential claim construction issues in a single page at the end of its brief, without addressing in detail any term of any of T-Rex's patent claims.[18]

While T-Rex submits that sufficient basis exists on the face of its patent claims to hold them patent-eligible, *see infra*, it would be manifestly unjust to rule the claims *unpatentable*—"in a complete vacuum," as this Court has repeatedly warned—without construing all terms that are likely to be disputed. As one example, claim terms such as "external information mediator"

---

[14] *See Certified Measurement, LLC v. Centerpoint Energy Houston Elec., LLC*, 2015 U.S. Dist. LEXIS 39821 (E.D. Tex. Mar. 29, 2015).

[15] Attached as Exhibit A, *My Health, Inc. v. Lifescan, Inc.*, Case No. 2:14-CVv-00683 Report and Recommendations on Motion to Dismiss (March 19, 2015).

[16] *http://www.txed.uscourts.gov/cgi-bin/view_document.cgi?document=22244* p. 5.

[17] Attached as Exhibit B, *Presqriber, LLC v. Advanced Data Sys. Corp.*, Case No. 6:14 –CV-859, Order, June 29, 2015, (same result in related case in order dated March 31, 2015); Attached as Exhibit C, *Content Guard Holdings, Inc. v. Amazon.com, Inc.*, Case No. 2:13CV-1112-JRG, Order April 8, 2015.

[18] *See* Motion to Dismiss (Dkt. 18) at 15.

('470 Patent, claims 25, 26), "mediators" ('334 Patent, claims 22, 29, 30), and "mediators of information" ('334 Patent, claims 32, 33, 40, 41) may be construed to require hardware and/or software that was not conventional or generic as the time of the invention, twenty years ago. It is implicit in Fairway's motion that this likely will be a disputed claim construction issue.[19] Similarly, Fairway tries to gloss over the term "real time" found in each independent claim of the T-Rex patents. Fairway offers its construction in a lone paragraph, as if the meaning is decided,[20] without benefit of the *Markman* process.

Defendant cannot contend with a straight face it will not dispute the meaning of other terms too, which could influence a finding on patentability. Thus, were the Court to find the decision on § 101 a close call, the *Markman* order could well make the difference in upholding the patents' validity, and the Court should at least deny Fairway's motion without prejudice.

**B. T-REX'S '470 & '334 PATENT CLAIMS ARE VALUD UNDER § 101.**

Turning to the underlying question of patentability under § 101, *Alice* laid out a two-step analysis: **step one**, determining whether the claims at issue are directed to a patent-ineligible abstract idea; and **step two**, if so, evaluating the elements of each claim—both individually and as an ordered combination—to assess whether the additional elements transform the nature of the claims into patent-eligible applications of that abstract idea.[21] The claims of T-Rex's patents-in-suit are not limited to merely an abstract idea; and even if they were held so limited, they would satisfy step two of the analysis by requiring additional elements to preserve their validity.

---

[19] *See* Motion to Dismiss at 14.

[20] *See* id.

[21] *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014).

### 1. T-REX'S PATENTS COVER MORE THAN AN ABSTRACT IDEA

To the extent that courts have declared patents invalid post-*Alice*, what the invalidated claims generally have in common, starting with the three primary Supreme Court decisions on point, is that they purported to preempt methods of doing business, mostly financial transactions, implemented solely on a general purpose computer.[22] Following the Supreme Court's lead, the Federal Circuit has affirmed the invalidation of broad method claims, including those that add nothing more than a general purpose computer to the method. Most recently, in *OIP Technologies*, that court agreed that claims drawn to "computer-implemented methods for 'pricing a product for sale.'" failed to cover patentability subject matter.[23]

Naturally, this Court takes the same approach, for example in May invalidating claims covering "a method and system for providing incentive awards programs over a computer network,"[24] and prior to that invalidating claims "recit[ing] a method enabling a customer to convert loyalty award credits of one vendor into loyalty awards of a second vendor so that the customer can use those converted credits to make purchases from the second vendor."[25] The one

---

[22] *See Bilski v. Kappos*, 562 U.S. 593, 598 (2010) (invalidated claims covered "a procedure for instructing buyers and sellers how to protect against the risk of price fluctuations"); *Mayo Collab. Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1296 (2012) (invalidated claims covered a law of nature, i.e., "relationships between concentrations of certain metabolites in the blood and likelihood that a dosage of a thiopurine drug will prove ineffective or cause harm"); *Alice*, 134 S. Ct. at 2352 (invalidated claims covered "a computerized scheme for mitigating 'settlement risk'—*i.e.*, the risk that only one party to an agreed-upon financial exchange will satisfy its obligation").

[23] *See OIP Techs., Inv. v. Amazon.com, Inc.*, 2015 U.S. App. LEXIS 9721 (Fed. Cir., Jun11, 2015).

[24] *See Kroy IP Holdings, LLC v. Safeway, Inc.*, 2015 U.S. Dist. LEXIS 69363 (E.D. Tex. May 29, 2015).

[25] *See Loyalty Conv. Sys. Corp. v. American Airlines, Inc.*, 2014 U.S. Dist. LEXIS 122244 (E.D. Tex. Sep. 3, 2014)

post-*Alice* decision from this Court that Fairway cites invalidated claims that "relate[d] to computer-implemented systems and methods for creating a sales proposal."[26]

Predictably, Fairway attempts to shoehorn the claims of T-Rex's patents into this convenient little glass slipper. According to its motion, "T-Rex's patents are directed to the abstract idea of sending instructions to a computer which then displays content based on the instructions."[27] This absurdly broad re-writing of the '470 and '334 Patents, if accurate, would seemingly cover, for example, any use of an Internet browser on a computer with a monitor that results in displaying content … or even typing on the onscreen keyboard of an iPhone (arguably a "computer"), and causing content to display on its screen. Of course T-Rex's claims are not that abstract or broad—it would have been inconceivable for the U.S. Patent Office to have granted such claims to the inventors, or to anyone else. And T-Rex's patents were before the PTO not just for initial examination and allowance, but the '470 Patent resulted from a reissue, which means the PTO has examined it again and still not raised patent-eligibility concerns.

In its post-*Alice* jurisprudence, this Court has applied common-sense to confirm patent eligibility, which supports T-Rex's position that its claims relate to patentable subject matter. In finding claims not abstract and denying a motion for summary judgment of invalidity in the *Freeny* case, this Court focused on the physical manifestation of the claimed "automated product pricing system."[28] It found the challenged claim was not abstract in part because it was "directed to physical systems for controlling the display and management of product prices in physical stores, utilizing specific types of electronic devices that are networked together to operate in a very specific manner." This Court similarly emphasized in *Rockstar* that the challenged claim,

---

[26] *See Clear with Computers, LLC v. Altec Indus., Inc.*, 2015 U.S. Dist. LEXIS 28815 (E.D. TX Mar. 3, 2015).

[27] Motion to Dismiss at 1, 9, 11.

[28] *See Freeny v. Murphy Oil Corp.*, 2015 U.S. Dist. LEXIS 6377

"requires a physical act in the world."[29] This is consist with the Federal Circuit's explanation in *Digitech* that, "[t]o qualify as a machine under section 101, the claimed invention must be a 'concrete thing, consisting of parts, or of certain devices and combinations of devices.'"[30]

The same is undeniably true of T-Rex's '470 and '334 Patent claims. Both the system and method claims of each patent relate to, quoting '334 claim 22, "coordinating and controlling electronic displays," the end result of which is the actual display in the physical world of a targeted message to a specified physical audience on one or more electronic displays. The patents describe, and system claim 32 of the '334 Patent, for example, requires specific interconnected hardware and software such as "computerized control center means," and "exposure handler means," along with the actual physical display screens themselves. In the '470 Patent, system claim 26 drops the "means" language and requires "a computerized control center," plus a separate connected "computerized device situated at each" location where a physical sign is coordinated and controlled to physically display information.

In some form, each claim elaborates that this allows updating in "real time" to control displays individually to permit them to display dynamically the same or different information independently of other displays. As noted above, Fairway devotes just one short paragraph to assuming a definition of "real time" undoubtedly designed to further its Motion to Dismiss, without allowing T-Rex the benefit of the *Markman* process.

In sum, the claims of T-Rex's '470 and '334 Patents cannot be summarily lumped in with the types of claims that courts have invalidated following *Alice*—especially not at the pleadings

---

[29] *See Rockstar Consortium US LP, Inc. v. Samsung Elecs. Co., Ltd.*, 2014 U.S. Dist. LEXIS 67097 (E.D. Tex. May 15, 2014).

[30] *See Digitech Image Techs. v. Electronics for Imaging, Inc.*, 758 F. 3d 1344, 1348-49 (Fed. Cir. 2014); *see also Westinghouse v. Boyden Power Brake Co.*, 170 S. Ct. 537, 556 (1898) ("A machine is a concrete thing, consisting of parts, or of certain devices and combinations of devices. The principle of a machine is properly defined to be its mode of operation….").

stage of this litigation, without addressing the meaning of potentially disputed claim terms. All of the claims require the presence and/or use of a concrete combination of certain devices to achieve a desired result with the required hardware and software in the physical world. Therefore, the Court should conclude that T-Rex's claims are not directed to an abstract idea.

### 2. T-REX'S CLAIMS INCLUDE ADDITIONAL MEANINGFUL LIMITATIONS.

If this Court disagrees with T-Rex on **step one**, then for **step two** the Court must ascertain whether the claims of the '470 and '334 Patents contain meaningful limitations that transform the abstract idea found into a patent-eligible invention. Or in the alternative, here also, the Court must decide whether claim construction would be required to make that determination. In its argument on this point, not only does Fairway continue to grossly over-simplify what the asserted patents cover—repeatedly referring to "use of **a computer** to carry out the particular claims,"[31] for example, rather than the **combination** of multiple distinct devices connected to form the claimed system—but Fairway also fails to take into account the correct timeframe for the analysis, as required. The question before the Court for step two is whether, at the time of filing the patent application, or date of invention if established, the concrete combinations of elements set forth in T-Rex's patent claims contained meaningful limitations.[32]

In *Content Extraction*, which Fairway seeks to rely on, the Federal Circuit dealt with the question of whether combining a scanner with a generic computer to implement a method of collecting, recognizing, and storing data satisfied the second step in *Alice*. The opinion stressed

---

[31] *See, e.g.,* Motion to Dismiss at 11 (emphasis added).

[32] *PC Connector Solutions LLC v. Smartdisk Corp.*, 406 F.3d 1359, 1363-64 (Fed. Cir. 2005) ("the word 'conventional' necessarily has a meaning specific to the time of filing."); *see Univ. of Utah Research Found. v. Ambry Genetics Corp. (In re BRCA1- & BRCA2- Based Hereditary Cancer Test Patent Litig.)*, 774 F.3d 755, 764 (Fed. Cir. 2014) (finding in *Alice* step 2 that non-ineligible claim element, "set forth well-understood, routine and conventional activity engaged in by scientists at the time of Myriad's patent applications.").

that the patentee "conceded at oral argument that the use of a scanner or other digitizing device to extract data from a document was well-known *at the time of filing*," in holding the claims patent-ineligible.[33] Of course T-Rex has not made any such concession, nor will it. The combination of physical devices connected in the '470 and '334 Patents' claims was novel and non-obvious 20 years ago, as the PTO agreed multiple times in allowing T-Rex's initial and reissued claims. Importantly, challenging whether or not the PTO was correct that T-Rex's claims were novel and non-obvious are invalidity arguments under §§ 102-103 … not § 101.

Earlier in 2015, this Court addressed *Content Extraction*, and also the Federal Circuit's *Ultramercial* and *DDR Holdings* opinions, in denying a summary judgement motion based on § 101 in the *Smartflash* litigation.[34] The Court noted that in *DDR*, "[t]he claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks," and the Federal Circuit upheld the claims' validity.[35] In finding Smartflash's asserted claims patent-eligible, this Court rejected exactly the sort of over-simplification Fairway attempts to impose on the claims of T-Rex's '470 and '334 Patents. Instead it focused on the "ordered combinations" of the claims, and concluded that, "the claims recite an inventive concept for resolving a particular 'Internet-centric problem.'"[36]

[33] *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

[34] *Smartflash LLC v. Apple, Inc.*, 2015 U.S. Dist. LEXIS 18419 (E.D. Tex. Jan. 21, 2015), *adopted in Smartflash LLC v. Apple Inc.*, 2015 U.S. Dist. LEXIS 17754 (E.D. Tex. Feb. 13, 2015), *subsequently upheld in* Order on the Renewed Motion for Judgment on July 8, 2015 (attached as Exhibit D); *see also DDR Holdings, LLC v. Hotels.com*, 773 F.3d 1245 (Fed. Cir. 2014); *Ultramercial, Inc. v. Hulu, LLC*,772 F. 3d 709 (Fed. Cir. 2014).

[35] *See id* at 19; *DDR Holdings*, 773 F. 3d at 1257.

[36] *Smartflash*, *supra* note 34, at 20.

This Court had reached a similar result in the *TQP Development* case, likewise denying a § 101 summary judgment motion, with Federal Circuit Judge Bryson writing, after walking through cases where claims were invalidated:

> "[i]n most of those cases a computer was used to perform steps that are commonly performed without a computer, such as hedging, effecting routine insurance transactions, or selecting an appropriate treatment regimen for a medical patient. This case, however, involves a way of making computer communication itself more effective by making that communication more secure. Thus, although the invention in this case does not result in the physical transformation of matter of the sort involved, for example, in *Diamond v. Diehr*, 450 U.S. 175 (1981) (method for curing rubber), it involves a specific system for modifying data that has equally concrete and valuable effects in the field of electronic communications.[37]

As in *Smartflash*, *TQP Development*, and *DDR Holdings*, T-Rex's invention arose in a specialized context—back in 1996—and the inventors came up with a specific solution, manifested in a concrete combination of devices, interfaces, and software, networked together with physical displays viewable by the target audience, to resolve particular problems.[38] The written description of the resulting '470 and '334 Patents, lays out myriad inadequacies—***at that time***—in the way advertisements and certain other information could be presented to the public: lack of coordination, inability to control items individually, "dead time" in a non-dynamic process, among other concerns.[39] Applying hindsight today, as Fairway does in its Motion, to suggest that each isolated piece of the claimed solution was somehow known or conventional in some individual sense, is utterly irrelevant—and at best an obviousness

[37] Attached as Exhibit E, *TQP Developments, LLC v. Intuit, Inc.*, No. 2:12-CV-180-WCB, Order, Feb. 19, 2014 (J.Bryson sitting by designation).

[38] Fairway alludes to other arguments against the T-Rex Patents in its Motion about the adequacy of the disclosure, etc. These two are other types of invalidity arguments, not arguments cognizable under or properly lumped into a § 101 analysis under *Alice*, et al.

[39] *See* '470 Patent, col. 1:27 to 2:36; '334 Patent, col. 1:27 to 2:52.

argument for another day. Taken together, T-Rex's patented system as a whole, in the '470 and '334 Patents' claims, had a concrete and valuable effect in this field, and thus is patentable.

## VI. CONCLUSION

For the reasons set forth above, T-Rex respectfully asks that the Court rule that the claims of T-Rex's asserted '470 Patent and '334 Patent properly claim patent-eligible subject matter under 35 U.S.C § 101, and deny Fairway's Motion to Dismiss. In the alternative, T-Rex submits that the Court should deny this Motion to Dismiss at least because T-Rex's Amended Complaint sets forth a plausible claim for relief at the pleading stage.

Dated: July 10, 2015

Respectfully submitted,

*/s/ Steven R. Daniels*

Steven R. Daniels
TX I.D. 24025318
E-mail: sdaniels@farneydaniels.com
FARNEY DANIELS P.C.
800 S. Austin Ave.
Suite 200
Georgetown, TX 78626
Tel.: (512) 582-2828
Fax: (512) 582-2829

*Attorneys for Plaintiff*
*T-Rex Property AB*

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2015, I electronically filed the foregoing filing with the Clerk of Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

*/s/ Steven R. Daniels*
Steven R. Daniels