**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| T-REX PROPERTY AB, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No. 4:15-cv-00073-RC |
| FAIRWAY OUTDOOR ADVERTISING, LLC, | § § § | JURY TRIAL DEMANDED |
| *Defendant.* | § § § | |

**DEFENDANT FAIRWAY OUTDOOR ADVERTISING, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Fairway Outdoor Advertising, LLC ("Fairway") submits this Reply in support of its Motion to Dismiss and in response to the arguments made by Plaintiff T-Rex Property AB ("T-Rex")'s Response.

**A. The Patents-in-Suit are Directed to An Abstract Idea, and Contain No Inventive Aspects**

T-Rex bristles at Fairway's illustrative analysis of the only claim identified by T-Rex in the Amended Complaint. Having only that claim (Cl. 25 of the '470 patent) as guidance, Fairway chose that method claim and a similar method claim in the '334 patent to illustrate the invalidity of the claims of those patents. To bolster its opposition, T-Rex now asserts other certain claims of the '470 and '334 patents, interestingly no longer apparently including claim 25 of the '470 patent. However, the method claims analyzed by Fairway fairly represent the alleged invention described in the patents-in-suit. The dependent claims add trivial variations on the method claims. *See Kroy IP Holdings, LLC v. Safeway, Inc.*, No. 2:12-cv-800-WCB, 2015 U.S. Dist. LEXIS 69363, at *60-61 (E.D. Tex. May 29, 2015). Notably, other courts have reached a determination on patent eligibility by focusing on representative claims, without addressing

every single claim. *E.g., CyberFone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 Fed. Appx. 988, 990 (Fed. Cir. 2014).

The patents-in-suit contain both method claims and system level claims. In the '470 patent, claims 1-12 and 25 are method claims and claims 13-24 and 26 are system claims. In the '334 patent, claims 1-10 and 22-31 are method claims and claims 11-21 and 32-42 are system claims. The system claims contain "means plus function" elements, generically referencing the components (such as a computerized control center) that perform the steps detailed in the method claims. System claim 26 contains "means plus function" language tied to generating and dynamically updating an exposure list and displaying images in accordance with the exposure list. Specifically, claim 26 refers to a *"means for generating and dynamically updating an exposure list"* and a *"means for displaying images in accordance with said exposure list."*

Method claim 25 and system claim 26 of the '470 patent share virtually identical and mirroring language, as mapped in green and italics in the table below.

| **Cl. 25 of the '470 Patent** | **Cl. 26 of the '470 Patent** |
|---|---|
| A method of *selectively displaying digital information at one or more of a plurality of locations,* said method comprising: | A system for *selectively displaying digital information at one or more of a plurality of locations,* said system comprising: |
| *receiving control instructions from at least one external information mediator;* | a computerized control center having a plurality of communication interfaces for *receiving control instructions from at least one external information mediator,* |
| using said control instructions to *generate an exposure list, said exposure list specifying three or more of the following items:* | said computerized control center including means for *generating* and dynamically updating *an exposure list* from said control instructions, *said exposure list specifying three or more of the following items:* |
| *i) what information is to be displayed;* | *i) what information is to be displayed;* |
| *ii) at which of said plurality of locations said information content is to be displayed;* | *ii) at which of said plurality of locations said information content is to be displayed;* |
| *iii) when said information content is to be displayed for each location at which* | *iii) when said information content is to be displayed for each location at which* |

| | |
|---|---|
| *content is to be displayed; and* | *content is to be displayed; and* |
| *iv) how long said information content is to be displayed for each location at which content is to be displayed;* | *iv) how long said information content is to be displayed for each location at which content is to be displayed;* |
| *displaying images* at one or more of said *locations in accordance with said exposure list*; and | a computerized device situated at each one of said plurality of *locations*, each computerized device being electronically coupled to said computerized control center; and |
| | a means for *displaying images in accordance with said exposure list* associated with each one of said computerized devices. |
| permitting said exposure list to be dynamically updated. | |

The system claim lacks additional functional language, beyond that already contained in the method claim, such that there is no actual disclosure of the system sufficient to perform the claimed function in its entirety. The inclusion of such "means plus function" language limits the system claim to the disclosures contained in the specification of the patent. *Valmont Indus. v. Reinke Mfg.*, 983 F.2d 1039, 1042 (Fed. Cir. 1993). In looking to the specification, only broad statements are made, but no definitive structure is disclosed for carrying out such functions. Thus, the system claims are invalid for the same reasons as the method claims. None of the additional asserted claims contain any elements capable of rising above the subject threshold of patent eligibility.

Case law is clear that merely inserting hardware components to carry out method steps is insufficient to claim patent-eligible subject matter. *Alice* held that implementing an abstract idea on a generic computer is patent ineligible subject matter. *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2360 (2014). "[T]he fact that the claimed system and methods employ computers or a network such as the Internet is clearly insufficient to make the claims patent eligible. The

computers and computer-related features recited in the claims are generic, commonplace components…" *Kroy*, No. 2:12-cv-800-WCB, 2015 U.S. Dist. LEXIS 69363, at *40-41. Using common components, as in this case, such as computers, a database, a modem, a projector, television sets, and cameras to manage the display of content "does not render the idea any less abstract or any more patentable." *Id.*, at *38. In *DDR Holdings*, the Federal Circuit discussed the many instances of claims reciting abstract and patent ineligible ideas, noting that "[a]lthough many of the claims recited various computer hardware elements, these claims in substance were directed to nothing more than the performance of an abstract business practice on the Internet or using a conventional computer. Such claims are not patent-eligible." *DDR Holdings,* 773 F.3d at 1256.

The claims in the '470 and '334 patents are of the same ilk as other overbroad claims that have been previously invalidated. For instance, *OIP Techs., Inc. v. Amazon.com, Inc.*, found that claims dealing with price optimization in the e-commerce setting failed to transform the abstract idea into a patent eligible application, and were merely "automation of the fundamental economic concept of offer-based price optimization through the use of generic-computer functions." *OIP Techs., Inc. v. Amazon.com, Inc.*, No. 2012-1696, 2015 U.S. App. LEXIS 9721, at *8 (Fed. Cir. Jun. 11, 2015). The patents-in-suit merely describe the use of such common components and functions as a generic computer receiving instructions (what, when, where, and how long), based on which instructions that generic computer sends information to a different generic computer which displays images using generic display devices. Contrary to T-Rex's assertion, post-*Alice* invalidated patents have encompassed more than methods of doing business. *E.g., Ultramerical, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014); *SmartGene, Inc. v. Advanced Biological Labs., SA*, 852 F. Supp. 2d 42 (D.C. 2012); *Affinity Labs of Tex., LLC v.*

*Amazon.com, Inc.*, No. 6:15-cv-0029-WSS-JCM, 2015 U.S. Dist. LEXIS 77411 (W.D. Tex. Jun. 12, 2015).

Apart from claiming an abstract idea, the claims fail to contain any significant inventive limitations or concepts to render the claims patent-eligible. The patents-in-suit fail to specify *how* the various components are used any differently beyond their conventional uses to solve a problem unique to digital displays. Use of such common components to perform generic functions such as display information, expose information, generate control instructions, update information, supply information, etc. are the types of basic functions that are wholly insufficient to elevate the abstract claims of a patent. Thus, the role of the common components "is limited to the basic functions of a generic computer, including storing, transmitting, and displaying information." *Kroy*, No. 2:12-cv-800-WCB, 2015 U.S. Dist. LEXIS 69363, at *42. "[T]he mere use of conventional computer functions as part of a claimed invention does not satisfy the machine-or-transformation test." *Id.*, at *48-49. *See also Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (additional limitations reciting "well-known, routine, and conventional functions of scanners and computers" were insufficient and did not contain any inventive concept); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (That a computer receives and sends the information over a network-with no further specification-is not even arguably inventive."). "Adding routine additional steps such as updating an activity log, requiring a request from the consumer to view the ad, restrictions on public use, and use of the Internet does not transform an otherwise abstract idea into patent-eligible subject matter." *Ultramerical*, 772 F.3d at 716.

T-Rex asserts that the invention arose in a specialized context to resolve particular problems, citing to *Smartflash*, *TQP Development*, and *DDR Holdings*. However, the inventive aspect capable of solving a specific problem arising out of the field of technology is missing here

– the claims of the patents-in-suit describe conducting routine activity using existing computer components. *Compare Smartflash LLC v. Apple, Inc.*, Nos. 6:13-cv-447-JRG-KNM and 6:13-cv-448-JRG-KNM, 2015 U.S. Dist. LEXIS 18419, at *43-44 (E.D. Tex. Jan. 21, 2015) (where claims solved problems faced by digital content providers in the Internet era and improved the functioning of the computer itself by providing protection for proprietary digital content). Here, the invention does not add anything "in order to overcome a problem specifically arising in the realm of computer networks," or digital displays. *Compare, with DDR Holdings*, 773 F.3d at 1258 (where claims specified "how interactions with the Internet are manipulated to yield a desired result – a result that overrides the routine and conventional sequence of events ordinarily triggered by the click of a hyperlink.").

T-Rex fails to point to any support for its self-serving claim that its system was not routine or conventional at the time of invention. Even viewing the system from the lens of 1996, T-Rex's claims were neither new nor novel. Digital signage driven by generic computers and displaying updated real time information was both commonplace and conventional at the time. As an illustrative common example, digital signage was being used in airports and train stations in 1996 to display schedule information – information which changes frequently. The patents-in-suit themselves acknowledge that familiar technology, referencing commonplace use of "[s]ystems that are used to show information in the form of advertisements, timetable messages on arrival and departure times in present-day public service infrastructures with regard to buses, trains, subway traffic, etc., is of a statuc nature." *See* '334 patent, 1:28-32; '470 patent, 1:27-31. The patents-in-suit further describe contemporary technology stating, "[Modern] *Modern* digital displays used, e.g., in conjunction with subway railway traffic [gives] *give* some of the aforesaid information but [is] *are* not controlled to display advertisements, warning messages, etc. " *See* '470 patent, 1:37-40; see also '334 patent, 38-41. Thus, through the specifications, T-Rex notes

6

the static nature of the existing and familiar technology, as well as perceived limitations in contemporary technology existing at the time of the filing. However, the perceived lacking features are not even present in the claims of the patents-in-suit. T-Rex similarly fails to proffer any support for its claim that the patents-in-suit have been forward-cited many times. Further, contrary to T-Rex's claim, the fact that the '470 patent has gone through reissue in no way precludes a finding of patent ineligibility under § 101. *See Enpat, Inc. v. Tenrox, Inc.*, No. 6:13-cv-948-Orl-31KRS, 2015 U.S. Dist. LEXIS 15931 (M.D. Fl. Feb. 10, 2015).

### B. Claim Construction Will Not Salvage the Claims

T-Rex contends that determining patent invalidity prior to claim construction is premature, disfavored at the intial pleading stage, and manifestly unjust. However, addressing patent eligibility at the outset of a case, rather than post-claim construction is appropriate in certain circumstances such as here. *Uniloc USA, Inc. v. Rackspace Hosting, Inc.*, 18 F. Supp. 3d 831, 834 (E.D. Tex. 2013) (granting motion to dimiss under Section 101). Recent cases support a determination at this preliminary stage. *Affinity Labs of Tex., LLC v. Amazon.com, Inc.*, No. 6:15-cv-0029-WSS-JCM, 2015 U.S. Dist. LEXIS 77411, at *10 (W.D. Tex. Jun. 12, 2015) (granting 12(b)(6) motion to dismiss and noting "…in this case the § 101 inquiry is properly addressed prior to claim construction."). Moreover, the Federal Circuit has affirmed multiple district court 12(b)(6) dismissals prior to claim construction, based upon patent ineligibility. *Internet Patents Corp. v. Active Network, Inc.*, Nos. 2014-1048, 2014-1061, 2014-1062, 2014-1063, 2015 U.S. App. LEXIS 10536 (Fed. Cir. Jun. 23, 2015) (affirming district court's 12(b)(6) pre-claim construction dismissal based upon patent ineligibility); *OIP Techs., Inc. v. Amazon.com, Inc.*, No. 2012-1696, 2015 U.S. App. LEXIS 9721 (Fed. Cir. Jun. 11, 2015) (affirming 12(b)(6) dismissal based on patent eligibility); *CyberFone Sys., LLC v. CNN Interactive Grp, Inc.*, 558 Fed. Appx. 988, 992, n. 1 (Fed. Cir. 2014) (affirming district court's

determination of patent ineligible subject matter, noting: "There is no requirement that the district court engage in claim construction before deciding § 101 eligibility"); *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1349 (Fed. Cir. 2014); *Ultramerical, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-720 (Fed. Cir. 2014) (affirming district court's determination of patent ineligible subject matter, noting "[N]o formal claim construction was required because the asserted claims disclosed no more than 'an abstract idea garnished with accessories' and there was no 'reasonable construction that would bring [them] within patentable subject matter.'"); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1352 (Fed. Cir. 2014) (affirming district court's judgement on the pleadings under § 101); and *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) (affirming district court's judgment of invalidity under § 101 on summary judgment, prior to claim construction).

Even at this initial stage, the patents-in-suit are ripe for determination of § 101 patent eligibility, because claim construction will not impact the § 101 analysis. None of Fairway's invalidity arguments are "implicitly premised on its conclusions about the meanings of certain claim terms." *Compare Certified Measurement, LLC v. Centerpoint Energy Houston Elec. LLC*, No. 2:14-cv-627-RSP, 2015 U.S. Dist. LEXIS 39821, at *5 (E.D. Tex. Mar. 29, 2015). Here, T-Rex has suggested that several claim terms are likely to be at issue, but wholly fails to assert *how* construction of such terms would impact the Section 101 analysis. *CyberFone*, 558 Fed. Appx. at 992, n. 1. Construction of T-Rex's identified terms such as, "external information mediator," "mediators," "mediators of information," and "real time," will not affect the analysis of the claims under § 101. As stated in Fairway's opening brief, those terms are abstract and any construction of them will be similarly abstract. T-Rex fails to point to any specific construction issue that would affect the analysis here.

Thus, there is simply no need to wait until the claim construction issues have been decided before considering whether the patents-in-suit are directed to an abstract idea. No claim construction will salvage T-Rex's claims because the specifications are devoid of any specifics or any changes needed to implement the hardware or how to implement software to accomplish the alleged invention. Any claim construction of the terms of the patents-in-suit would invariably still relate back to the specification and fail to introduce anything novel. As urged in other cases, even if the claim terms are construed in the light most favorable to T-Rex, none of the claims will survive § 101. *Wireless Media Innovations, LLC v. Maher Terminals, LLC*, Nos. 14-7004 and 14-7006, 2015 U.S. Dist. LEXIS 51811, at *11 (D.N.J. Apr. 20, 2015).

Judicial economy favors a § 101 determination at the pleadings stage. "Addressing 35 U.S.C. § 101 at the outset not only conserves scarce judicial resources and spares litigants the staggering costs associated with discovery and protracted claim construction litigation, it also works to stem the tide of vexatious suits brought by the owners of vague and overbroad business method patents. Accordingly, where, as here, asserted claims are plainly directed to a patent ineligible abstract idea, we have repeatedly sanctioned a district court's decision to dispose of them on the pleadings." *OIP Techs.*, No. 2012-1696, 2015 U.S. App. LEXIS 9721, at *11-12 (H. Mayer, concurring).

Based on the above, Fairway respectfully requests dismissal of this lawsuit under Fed. R. Civ. P. 12(b)(6) based upon the patent-ineligible subject matter of T-Rex's asserted patents-in-suit.

July 23, 2015                                                         Respectfully submitted,

                                                                                       /s/ Russell T. Wong
                                                                                       Russell T. Wong
                                                                                       *Lead Attorney*
                                                                                       Texas Bar No. 21884235

        Sarah R. Cabello
        Texas Bar No. 24052877
        Blank Rome LLP
        717 Texas Avenue, Suite 1400
        Houston, TX 77002
        Tel.: 713.228.6601
        Fax: 713.228.6605
        Email: rwong@blankrome.com
        Email: scabello@blankrome.com

*Attorneys for Defendant*
**FAIRWAY OUTDOOR ADVERTISING, LLC**

## CERTIFICATE OF SERVICE

    I hereby certify that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who have consented to electronic service, pursuant to Local Rule CV-5(a)(3)(A), on this 23rd day of July, 2015.

        */s/ Lynn Marlin*
        Lynn Marlin